**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
HIMOINSA POWER SYSTEMS, INC., and  )
HIMOINSA, S.L.,                    )
                                   )
              Plaintiffs,          )    CIVIL ACTION
                                   )
v.                                 )    No. 08-2601
                                   )
POWER LINK MACHINE CO., LTD.,      )
a Chinese corporation,             )
                                   )
              Defendant.           )
                                   )
```

**MEMORANDUM AND ORDER**

This matter comes before the court on defendant Power Link Machine Company's ("Power Link") motion to dismiss plaintiffs Himoinsa Power Systems, Inc. and Himoinsa S.L.'s ("Himoinsa") complaint. (Doc. 11). The motion has been fully briefed and is ripe for decision. (Docs. 12, 19, 20, 24, 44, 45).

Defendant claims, in pertinent part, that plaintiffs failed to properly serve process upon defendant under Federal Rules of Civil Procedure 12(b)(4), (5). This motion is denied. Defendant also claims that this court lacks personal jurisdiction over defendant under Fed. R. Civ. P. 12(b)(2). This motion is granted.

**I.    BACKGROUND FACTS AND PROCEDURAL HISTORY**

Himoinsa Power Systems is a Kansas corporation. Himoinsa Spain is a Spanish limited company. Plaintiffs manufacture and sell industrial equipment, including electrical generators, globally. Himoinsa owns United States Federal Trademark Reg. No. 2,971,963.

Defendant is a Chinese limited company that sells electrical generators for industrial applications. Plaintiffs assert that

"[defendant's] goods are identical or nearly identical to those of [plaintiffs]." Defendant maintains a website at http://www.powerlink.cn.

On December 2-4, 2008, defendant attended a trade show in Orlando, Florida. Defendant was listed as an exhibitor and operated a small booth. Defendant did not sponsor any advertising. During the trade show, two process servers served defendant's employees, Patrick Wang (overseas sale manager) and Han Som (regional sales manager) at the trade show in Florida.

The court granted limited discovery on defendant's contacts with Florida six months prior to and following the December 2008 trade show as well as evidence that defendant was transacting business in Florida. (Doc. 41). Discovery is complete and plaintiffs submit the following:

1. Wang's and Som's business cards were disbursed to attendees at the trade show.
2. Defendant and its South American distributor received business cards from other attendees at the trade show, 13 of which were Florida contacts.
3. One invoice reflecting the sale of engines to Champion Equipment Co, located in Pensacola, Florida, with a destination port of anywhere in the United States.
4. One invoice reflecting the sale of engines to Mid America Engine, Inc. ("Mid America") with a destination port of Miami, Florida.
5. Defendant identified only Wang and Som as representatives of defendant at the trade show.

Plaintiffs contacted Panjiva, Inc., "a business that provides information for global trade professionals, conducting background checks on companies, and keeping tabs on companies' activities" for the purpose of discovering whether defendant had additional contacts with Florida within six months before and after the December 2008 trade show. (Doc. 44 at 8). Plaintiffs submit the following transactions of defendant's sales and/or contacts with Florida during the relevant time period:

| Shipper | Receiving Party | Location | Date(s) | Seaport | Product |
| --- | --- | --- | --- | --- | --- |
| Power Link | Champion Equipment | Pensacola Florida | 06/05/08 11/01/08 01/07/09 | Mobile | Diesel Generator Sets |
| Power Link | Mid America Engine | Warrior Alabama | 11/14/08 | Miami | Diesel Generator Sets |
| Power Link | General Power Ltd. | Miami Florida | 11/21/08 12/27/08 01/31/09 | Port Everglades/Port Lauderdale | Diesel Generator Sets |

Plaintiffs further claim that there were two shipments on November 14, 2008, and January 31, 2009.

Defendant responds that only two of the nine invoices were sales made to United States companies, one of which was located in Florida. First, defendant contends the two shipments on November 14 are duplicates. The same is true for the two shipments on January 31.

-3-

Second, defendant contends that the January 7, 2009, shipment to Champion Equipment was made by a different company, Power Electronic LTD. Third, defendant claims that General Power, its South American distributor, transships the generators outside of the United States and does not conduct any sales within the United States. According to defendant, its generators are sent to a United States port in Florida and then re-shipped to a South American destination. Fourth, defendant claims that the June 5, 2008, shipment to Champion Equipment was not diesel generator sets and therefore, is not applicable.

Based upon the invoices submitted by plaintiffs, the court is unable to determine whether or not the two November 14 and two January 31 invoices are duplicates. All four invoices display different bill of lading numbers. The two January 31 invoices display different container numbers.

In the last analysis, however, resolution of these disputes is not necessary to the court's rulings.

**II.  ANALYSIS**

Defendant moves to dismiss plaintiffs' complaint for the following reasons: 1) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); 2) improper venue or forum non conveniens pursuant to Fed. R. Civ. P. 12(b)(3);[1] 3) insufficiency of service pursuant to Fed. R. Civ. P. 12(b)(4); 4) insufficiency of service of process pursuant to Fed. R. Civ. P. 12(b)(5); 5) failure to state a

---

[1] Defendant suggests that if the case is not dismissed, it should be transferred to Florida. (Doc. 12 at 27-28). Plaintiffs do not respond in kind, asserting only that venue in Kansas is "proper." (Doc. 20 at 19). The court declines to burden a Florida court with this case based on such a non-responsive answer.

-4-

claim that entitles plaintiffs to relief pursuant to Fed. R. Civ. P. 12(b)(6); and 6) the complaint is so vague or ambiguous that defendant is unable to respond pursuant to Fed. R. Civ. P. 12(e). Claims one and four are dispositive.

### 1. Service

Service on a corporation is provided in Fed. R. Civ. P. 4(h). One of the methods of serving a corporation is to follow Fed. R. Civ. P. 4(e)(1), service on an individual. Fed. R. Civ. P. 4(e)(1) provides:

> Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
>
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; ...

Therefore, the court looks to Kansas (where the action is brought) or Florida (where service was made) law on the issue of proper service.

### A. Florida Law

Defendant's overseas and regional sales managers were served in Florida. Plaintiffs bear the burden to establish valid service of process. Youngblood v. Citrus Associates of New York Cotton Exchange, Inc., 276 So.2d 505, 509 (Fla. Ct. App. 1973).

The parties exchanged discovery regarding defendant's business transactions and activities in Florida. However, no discovery was done as to whether defendant was properly served process by the process servers at the December 2008 trade show. The parties have submitted conflicting affidavits detailing how service was made on Messrs. Wang and Som. (Docs. 20-12, 20-13, 20-14, 24-2, 24-3). The

rule in the Tenth Circuit is as follows:

> Upon a pretrial motion to dismiss for insufficient service of process, the plaintiff must make a prima facie showing that service satisfied the statutory requirements and the constitutional requirement of due process. (Citations omitted). A court may decide such jurisdictional issues by reference to affidavits, after a pretrial evidentiary hearing, or at trial if the issues are intertwined with the merits of the suit. <u>Federal Deposit Ins. Corp. v. Oaklawn Apartments</u>, 959 F.2d 170, 174 (10th Cir. 1992). When opposing a motion to dismiss supported by affidavits and other written materials, the plaintiff need only make a prima facie showing and may rely on the "well pled facts" of the complaint if uncontroverted by the movant's affidavits. <u>Id.</u> at 174. If the jurisdictional allegations in the complaint are challenged, the plaintiff must then support them with competent proof. <u>Pytlik v. Professional Resources, Ltd.</u>, 887 F.2d 1371, 1376 (10th Cir. 1989). At this initial stage, factual disputes created by conflicting affidavits are resolved in the plaintiff's favor. (Citations omitted). If the factual disputes require an evidentiary hearing or must await a trial on the merits, the plaintiffs must then prove the critical jurisdictional facts by a preponderance of the evidence. (Citations omitted).

<u>Brand v. Mazda Motor of America, Inc.</u>, 920 F. Supp. 1169, 1171 (D. Kan. 1996). Based upon the authority cited above, the court will decide the issue of insufficient service of process on the affidavits.

In their statements on the returns of service, both process servers stated that they delivered the papers to Wang and Som who received them in hand. Then, according to the process servers, Wang and Som put the papers down. There were no other representatives or employees for defendant present at the trade show when service was made.

Wang and Som counter that they told the process servers that they were not authorized to receive service and did not touch the papers. Instead, Wang and Som claim that they either found the papers on a display or saw the process server set them down.

-6-

The court accepts the affidavits of the process servers who, after all, "have no dog" in the dispute. Regardless, in hand service is not mandatory for sufficient service of process, especially when the individual refuses or attempts to refuse to accept service, which appears to be what occurred. See Smith v. Pure, 8:07-cv-1140-T-24 MSS, 2007 WL 2972949, at *1 (M.D. Fla. Oct. 9, 2007) ("Personal service need not be face to face or hand to hand."); Richardson v. Alliance Tire and Rubber Co., Ltd., 158 F.R.D. 475, 482 (D. Kan. 1994) ("Under Kansas law, substantial compliance with the requirements for service and awareness of the action are all that is necessary.").

Next, defendant claims that service was not proper because it was not transacting business in Florida. "The Florida 'long-arm' statutes ... require more activities or contacts to sustain service of process than are currently required by the decisions of the United States Supreme Court." Youngblood, 276 So.2d at 508. Florida Statute § 48.081 is read in pari materia with § 48.181.

> Section 48.081 provides in part:
>
> (1) Process against any private corporation, domestic or foreign, may be served:
>
> (a) On the president or vice president, or other head of the corporation;
>
> (b) In the absence of any person described in paragraph (a), on the cashier, treasurer, secretary, or general manager;
>
> (c) In the absence of any person described in paragraph (a) or paragraph (b), on any director; or
>
> (d) In the absence of any person described in paragraph (a), paragraph (b), or paragraph (c), on any officer or business agent residing in the state.
>
> (2) If a foreign corporation has none of the foregoing officers or agents in this state, service may be made on

-7-

any agent transacting business for it in this state.

F.S.A. § 48.081(1) and (2). Section 48.181 states in part:

> (3) Any person, firm, or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers, or distributors to any person, firm, or corporation in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

F.S.A. § 48.181(3).

To meet the requirements of F.S.A. § 48.081, plaintiffs must show that defendant, which is not qualified to do business in Florida, was doing business, that process was served upon a person qualified to accept such process, and show connexity.[2] Youngblood, 276 So.2d at 509 (noting that "the doing business requirement necessarily includes the concept of minimum contacts[]").

### Transacting Business

The court finds that defendant employees Wang and Som were "agents transacting business" within the meaning F.S.A. § 48.081(2) and (3).[3] Wang and Som attended the December 2008 trade show in Florida as defendant's representatives. Defendant contracted to have a booth set up at the trade show, which displayed a sample model generator. While plaintiffs have not necessarily produced evidence

---

[2] "'Connexity' is the term courts have adopted to mean a link between a cause of action and the activities of a defendant in the forum state." White v. Pepsico, Inc., 568 So.2d 886, 889 (Fla. 1990).

[3] Plaintiffs also allege that Wang's and Som's titles as overseas and regional sales managers, they qualify as "general managers" under F.S.A. § 48.081(1)(b). However, plaintiffs have not fully briefed this argument.

-8-

of specific sales and/or contacts stemming from Wang and Som's presence at the trade show, it is hard to imagine a situation where defendant's presence at the trade show would not be for the purpose of developing new clients and/or contacts, especially after defendant paid for a booth and displayed its generator. Clearly, defendant was either receiving an economic benefit by attending the trade show in Florida or hoping to do so. Defendant's attendance and participation in the trade show was motivated by pecuniary gain. Therefore, defendant's agents were transacting business within the meaning of F.S.A. § 48.081(2).

Plaintiffs have also shown that defendant was transacting business with Florida companies within six months prior to and after the trade show. Based on the limited discovery conducted by the parties, and plaintiffs' additional research, defendant made at least one shipment of diesel generators to Champion Equipment in Florida. Presumably, the generators remained in Florida. Defendant has not argued otherwise. Additionally, defendant made one shipment of other product to Champion Equipment in June 2008.

Defendant also made several shipments to at least three different ports in Florida. While one of the shipments was then delivered to Mid America Engine Alabama, the rest were transhipped from Florida by defendant's South American distributor.

The court does not consider defendant's shipment to Mid America Engine to be transacting business in Florida. The only benefit defendant could have possibly received in the transaction was the ability to send Mid America Engine's shipment to a Florida port. No sale occurred in Florida and the generator did not stay in Florida.

-9-

On the other hand, defendant did receive a pecuniary benefit every time it shipped generators to General Power. As its distributor, defendant sold generators to General Power. General Power maintains an office in Miami, Florida. The fact that General Power's sales are made to non-Florida companies does not minimize defendant's sales to General Power. Defendant was transacting business in Florida by selling to its South American distributor as well as Champion Equipment.

### Connexity

Plaintiffs claim that defendant's Florida activities and attendance at the trade show contributed to the trademark infringement because each time defendant sold and/or displayed its products bearing the infringing mark as alleged by plaintiffs, plaintiffs felt an economic injury in Kansas. See Toytrackerz LLC v. Koehler, No. 08-2297-GLR, 2009 WL 1505705, n. 96 (D. Kan. May 28, 2009).

Notwithstanding the fact that defendant did not address the connexity prong in its supplemental brief, the court finds that the connexity requirement of F.S.A. § 48.081(2) is met. The court agrees with plaintiffs that defendant's Florida activities contributed to the cause of action.

**2. Personal Jurisdiction**

It is well established that under a Rule 12(b)(2) motion to dismiss, plaintiff bears the burden of establishing personal jurisdiction over the defendant. See Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). The court must accept as true the allegations set forth in the complaint. If defendant presents conflicting affidavits, then the court must

resolve all factual disputes in favor of the plaintiff. <u>Toytrackerz</u>, 2009 WL 1505705 at 3.

Plaintiffs bring their claims under the Lanham Act, which does not provide for nationwide service of process. <u>Id.</u> Therefore, the court applies Kansas personal jurisdiction rules. To establish personal jurisdiction, plaintiff must show that: 1) the jurisdiction is authorized under Kansas law and 2) the exercise of such jurisdiction would not offend due process. See <u>Far West Capital, Inc. v. Towne</u>, 46 F.3d 1071, 1074 (10th Cir. 1995).

**A. Kansas Long-Arm Statute**

The Kansas long-arm statute specifies that a party submits to the jurisdiction of Kansas if the cause of action against it "aris[es] from the doing of any of [eleven particular] acts." K.S.A. 60-308(b). The Tenth Circuit has interpreted the Kansas long-arm statute "to allow jurisdiction to the full extent permitted by due process," such that these two inquiries become duplicative. <u>Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.</u>, 17 F.3d 1302, 1305 (10th Cir. 1994); see also <u>OMI Holdings, Inc. v. Royal Ins. Co. of Can.</u>, 149 F.3d 1086, 1090 (10th Cir. 1998) (explaining that a court, when considering a 12(b)(2) motion under Kansas law, may proceed directly to the constitutional issue). One Kansas court has held, however, that "[t]he fact that 60-308(b) is to be liberally construed does not mean that the courts are to ignore the statutory requirement that the cause of action arise from the defendant's doing of one or more of the enumerated acts in this state." <u>Three Ten Enters., Inc. v. State Farm Fire & Cas. Co.</u>, 24 Kan. App. 2d 85, 91, 942 P.2d 62, 67 (Kan. Ct. App. 1997).

-11-

The Kansas Long-Arm Statute, K.S.A. 60-308(b) provides in relevant part that

> [a]ny person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
>
> (B) commission of a tortious act within this state[]

Physical presence within the forum state is not necessary. When the defendant has purposefully availed itself of the protections and benefits of the forum state, jurisdiction will be found reasonable. Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd., 385 F.3d 1291, 1296 (10th Cir. 2004).

Plaintiffs contend that defendant submitted to personal jurisdiction in Kansas when it committed one or more tortious acts within Kansas, i.e. trademark dress infringement, false designation of origin, and unfair competition under both federal and Kansas law. K.S.A. 60-308(b).

Trademark infringement has been held to satisfy the Kansas long-arm statute. Toytrackerz, 2009 WL 1505705 at 16 (stating that "trademark infringement can be considered a 'tortious act' within the meaning of the Kansas long-arm statute[]"). Trademark infringement causes an economic injury that is felt in the state in which the owner of the mark resides. Id. n. 96. Plaintiffs have shown that jurisdiction over defendant meets the Kansas long-arm statute. However, plaintiffs must still show that defendant's contacts with

-12-

Kansas satisfy due process.

**B. Due Process**

The following factors represent the current law of the Tenth Circuit. In <u>Bell Helicopter Textron</u>, the court stated:

> To satisfy the constitutional requirement of due process there must be "minimum contacts" between the defendant and the forum state. <u>World-Wide Volkswagen Co. v. Woodson</u>, 444 U.S. 286, 291 (1980) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945).
>
> * * *
>
> The "minimum contacts" standard may be met in either of two ways. When the defendant has "continuous and systematic general business contacts" with the forum state, courts in that state may exercise general jurisdiction over the defendant. <u>Helicopteros Nacionales de Colombia, S.A., v. Hall</u>, 466 U.S. 408, 414-15 (1984); (citations omitted). When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction in cases that "'arise out of or relate to' those activities." <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 472-73 (1985) (citations omitted) . . .
>
> To support specific jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958) (citation omitted); <u>see</u> <u>also</u> <u>Fidelity and Cas. Co. of N.Y. v. Phila. Resins Corp</u>., 766 F.2d 440, 445 (10th Cir. 1985).[1] This requirement of "purposeful availment" for purposes of specific jurisdiction precludes personal jurisdiction as the result of "random, fortuitous, or attenuated contacts." <u>Burger King</u>, 471 U.S. at 475 (citations and internal quotation marks omitted).
>
> * * *
>
> Generally speaking, specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else. <u>OMI Holdings Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086, 1092 (10th Cir. 1998).

> [1] A finding of minimum contacts with the forum is necessary, but is not sufficient for the exercise of personal jurisdiction. A district court must also

-13-

> consider whether personal jurisdiction is reasonable in light of the circumstances surrounding the case. <u>Burger King</u>, 471 U.S. at 476; <u>Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.</u>, 205 F.3d 1244, 1247 (10th Cir. 2000). Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies. <u>Burger King</u>, 471 U.S. at 477; <u>Intercon, Inc.</u>, 205 F.3d at 1249.

Plaintiffs do not argue that defendant maintains continuous and systematic contacts such that the court would have general personal jurisdiction over defendant. Nor would there be a basis for such an argument. Therefore, the court will only address the issue of specific personal jurisdiction.

The court makes two inquiries when determining whether it has specific personal jurisdiction over a defendant: first, is defendant's conduct and connection with [Kansas] such that it should reasonably anticipate being haled into court here. "Within this inquiry the court must determine whether ... defendant purposefully directed its activities at [plaintiffs], and whether the plaintiff[s'] claim arises out of or results from "actions by ... defendant ... that create a substantial connection with the forum state. Second, if a defendant's actions satisfy the minimum contacts requirement, then "the court must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" <u>Toytrackerz</u>, 2009 WL 1505705 at 5.

## Minimum Contacts

Plaintiffs have not shown that defendant purposefully directed its activities at residents of Kansas. Defendant is not licensed to do business in Kansas and has no agents, businesses, or representatives located in Kansas. Nor has defendant made any sales in Kansas or entered into any contracts with Kansas residents.[4] Although from a legal standpoint the injury of the alleged trade dress infringement was felt in Kansas, the injury was simply a consequence of defendant's sales and marketing in other states. Defendant did not purposefully direct any sales or marketing of the infringing product towards Kansas. As such, plaintiffs have not shown any evidence to support their allegation that "[defendant] has actively and prominently promoted its goods in Kansas ...." (Doc. 1 at 4).

Plaintiffs' argument that defendant's website is sufficient to establish jurisdiction also is not supported by the evidence. Plaintiffs submit several exhibits of defendant's website as well as other sites offering defendant's products for sale. (Docs. 20-2 to 20-8). While it is true that defendant maintains a website that provides the viewer information about defendant's products, the viewer cannot purchase defendant's products directly from the website. A passive website that provides information to interested Kansas residents is insufficient to establish personal jurisdiction over defendant. See Soma Medical Intern. v. Standard Chartered Bank, 196 F.3d 1292, 1297 (10th Cir. 1999); Toytrackerz, 2009 WL 1505705 at 7 ("A passive Web site that does little more than make information

---

[4] It appears from discovery that defendant has made sales to Florida and Alabama companies.

available to those who are interested in it is not grounds for the exercise of personal jurisdiction."). The other sites that provide a means for a customer to order defendant's products are not defendant's sites nor subject to defendant's control. It is not reasonable for defendant to be held responsible for the other sites submitted by plaintiffs.

Because the court finds that plaintiffs have not established the requisite minimum contacts sufficient to meet due process, the court will not address the second inquiry in the specific personal jurisdiction analysis. The court lacks personal jurisdiction over defendant and plaintiffs' claims are dismissed, without prejudice.

**III. CONCLUSION**

For the reasons stated more fully herein, defendant's motion to dismiss (Doc. 11) for insufficient service of process is denied. Defendant's motion to dismiss for lack of personal jurisdiction is granted. Plaintiffs' claims are dismissed, without prejudice.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall

strictly comply with the standards enunciated by this court in <u>Comeau</u>.

IT IS SO ORDERED.

Dated this  24th  day of August 2010, at Wichita, Kansas.

                                              <u>s/ Monti Belot</u>
                                              Monti L. Belot
                                              UNITED STATES DISTRICT JUDGE